GAWLOSKI et al., Appellants,

v.

MILLER BREWING COMPANY, Appellee.*

[Cite as *Gawloski v. Miller Brewing Co.* (1994), 96 Ohio App.3d 160.]

Court of Appeals of Ohio,
Lorain County.

No. 94CA005789.

Decided July 27, 1994.

* Reporter's Note: A discretionary appeal to the Supreme Court of Ohio was not allowed in (1994), 71 Ohio St.3d 1411, 641 N.E.2d 1110.

*Raymond D. Gawloski,* pro se.

*Stephen William Gumpl,* pro se.

*Charles H. Walker* and *Catherine M. Ballard,* for appellee.

REECE, Presiding Judge.

Appellants, Raymond D. Gawloski and Stephen William Gumpl, appeal from the trial court's order granting the appellee, Miller Brewing Company ("Miller"), judgment on the pleadings on the appellants' products liability claim. We affirm.

The appellants are currently incarcerated at the Grafton, Ohio Correctional Institution. On May 17, 1993, they filed a *pro se* products liability complaint against Miller based on Miller's production, distribution, and sale of beer. In the complaint, the appellants alleged that they began drinking Miller beer in 1969 and have been alcoholics addicted to Miller beer since at least 1975. The appellants further claimed that Miller's product was the proximate cause of their alcoholism, which ultimately caused them to exercise poor judgment, engage in criminal behavior, and destroy their relationships with spouses, family, and friends.

The appellants initially pled a full complement of products liability claims: (1) that Miller beer was unreasonably unsafe in design, (2) that the sale of Miller beer breached an implied warranty of merchantability because the beer was "defective, deleterious, and harmful" in that it caused alcoholism, (3) that Miller failed to warn consumers of the health hazards and addictive qualities of regularly using beer, and (4) that Miller "concealed the known risks, misrepresented their product as safe, and fraudulently advertised Miller Beer as a product which was an enhancer of the quality of life." In the appellants' response to Miller's motion for judgment on the pleadings, the appellants withdrew all of their claims except the claim for fraudulent concealment and misrepresentation. After reviewing the pleadings, the trial court held: "[I]f [Miller] fraudulently misrepresented or concealed the true effects of consumption of their product containing alcohol, the complaint must still fail. The risk of alcohol consumption is a matter of common knowledge and therefore there is no duty to warn [the appellants] of the effects." The appellants raise as their single assignment of error the trial court's entry of judgment on the pleadings.

After the pleadings in a case have been filed, a Civ.R. 12(C) motion for judgment on the pleadings may be employed by a defendant to assert that the

plaintiff has failed to state a claim upon which relief can be granted. *Burnside v. Leimbach* (1991), 71 Ohio App.3d 399, 402, 594 N.E.2d 60, 61–62. Thus, a motion for judgment on the pleadings has been characterized as a belated Civ.R. 12(B)(6) motion for failure to state a claim upon which relief can be granted. *Nelson v. Pleasant* (1991), 73 Ohio App.3d 479, 482, 597 N.E.2d 1137, 1139. Therefore, the same standard of review is applied to both motions. *Id.* The court must limit its inquiry to the material allegations contained in the complaint and accept those allegations and all reasonable inferences as true. *Lin v. Gatehouse Constr. Co.* (1992), 84 Ohio App.3d 96, 99, 616 N.E.2d 519, 521. If, after undertaking this review, the allegations in the complaint are such that the plaintiff could prove no set of facts which would entitle him to relief, the moving party is entitled to judgment as a matter of law. *Id.*

 As a general rule, a manufacturer does not have a duty to warn consumers of dangers inherent in the use of the manufacturer's product if those dangers are generally known and recognized by the ordinary consumer. 2 Restatement of the Law 2d, Torts (1965) 352–353, Section 402A, Comments *i* and *j; Sapp v. Stoney Ridge Truck Tire* (1993), 86 Ohio App.3d 85, 98–99, 619 N.E.2d 1172, 1180–1181. Ohio has codified this rule in R.C. 2307.76(B):

"A product is not defective due to lack of warning or instruction or inadequate warning or instruction as a result of the failure of its manufacturer to warn or instruct about an open and obvious risk or a risk that is a matter of common knowledge."

Based on this prevailing rule of law, courts have consistently found that brewers and distributors of alcoholic beverages do not have a duty to warn consumers of the dangers inherent in the excessive or prolonged use of alcohol because those dangers are within the body of knowledge common to the community and are generally known and recognized by the ordinary consumer. See, *e.g., Desatnik v. Lem Motlow Prop., Inc.* (Jan. 9, 1986), Mahoning App. No. 84 C.A. 104, unreported, 1986 WL 760 (whiskey); *Garrison v. Heublein, Inc.* (C.A.7, 1982), 673 F.2d 189 (vodka); *Malek v. Miller Brewing Co.* (Tex.App.1988), 749 S.W.2d 521 (beer). In *Joseph E. Seagram & Sons, Inc. v. McGuire* (Tex.1991), 814 S.W.2d 385, 388, the Texas Supreme Court specifically found that alcoholism is one of the generally known and recognized dangers attributable to the prolonged and excessive use of alcoholic beverages.[1]

---

**1.** "Alcoholism" is commonly defined as "continued excessive or compulsive use of alcoholic drinks * * * [or] a complex chronic psychological and nutritional disorder associated with excessive and usually compulsive drinking." Webster's Ninth New Collegiate Dictionary (1984) 69.

The appellants do not contest the persuasiveness of the cited authority; in fact, on the basis of this authority, the appellants withdrew most of the products liability claims they had initially pled. The appellants instead contend in their brief that this authority does not directly control their claim for misrepresentation because the misrepresentation claim is not based on Miller's failure to warn but on Miller's affirmative act of misrepresenting its product as safe through "advertising which negated and neutralized any 'common knowledge' within the community about the dangers of their product." As support for this distinction, the appellants cite the United States Supreme Court decision in *Cipollone v. Liggett Group, Inc.* (1992), 505 U.S. ——, 112 S.Ct. 2608, 120 L.Ed.2d 407.

In *Cipollone*, the petitioner brought a diversity action in federal court, asserting several products liability claims under New Jersey common law against Liggett Group, Inc., a manufacturer of cigarettes. The United States Supreme Court was asked to determine if the petitioner's claims were pre-empted by the 1965 and 1969 federal Acts requiring warnings on cigarette packages. The court held that the federal legislation did not pre-empt all of the petitioner's state common-law claims, only those claims that conflicted with the narrow pre-emption language contained in the federal warning and labeling provisions. As a result, the court evaluated each of the petitioner's claims individually to determine which claims were pre-empted. As part of this evaluation, the court distinguished the petitioner's failure-to-warn claims from one of the petitioner's fraudulent-misrepresentation claims, finding that a misrepresentation claim based on a manufacturer's false statement of material fact in an advertisement was not pre-empted by the federal legislation's warning and labeling provisions. 505 U.S. at ——, 112 S.Ct. at 2623–2625, 120 L.Ed.2d at 430–431. The court cautioned, however, that "we express no opinion on whether these actions are viable claims as a matter of state law; we assume arguendo that they are." 505 U.S. at ——, 112 S.Ct. at 2621, 120 L.Ed.2d at 427.

Although we find the *Cipollone* case to have little relevance to this appeal, we do acknowledge that a products liability claim for misrepresentation is distinct from a claim for failure to warn. A products liability claim brought in Ohio is controlled by Ohio's Product Liability Act, R.C. 2307.71 to 2307.80. That Act provides in R.C. 2307.77 that "[a] product is defective if it did not conform, when it left the control of its manufacturer, to a representation made by that manufacturer. A product may be defective because it did not conform to a representation even though its manufacturer did not act fraudulently, recklessly, or negligently in making the representation." No reported Ohio case has addressed the substantive application of R.C. 2307.77. But, see, *Paugh v. R.J. Reynolds Tobacco Co.* (N.D.Ohio 1993), 834 F.Supp. 228 (applying R.C. 2307.77 to an express warranty claim against a cigarette manufacturer). The language in R.C.

2307.77 is similar to that found in Section 402B, 2 Restatement of the Law 2d, Torts (1965) 358, and we accordingly turn to that treatise for guidance in this area of the law.

Section 402B provides:

"One engaged in the business of selling chattels who, by advertising, labels, or otherwise, makes to the public a misrepresentation of a material fact concerning the character or quality of a chattel sold by him is subject to liability for physical harm to a consumer of the chattel caused by justifiable reliance upon the misrepresentation, even though

"(a) it is not made fraudulently or negligently, and

"(b) the consumer has not bought the chattel from or entered into any contractual relation with the seller."

Applying the tort elements contained in Section 402B to the cause of action codified in R.C. 2307.77, we hold that a plaintiff seeking to recover for injuries incurred through the use of a product that does not conform to a manufacturer's representation must prove:

(1) that the manufacturer made a representation as to a material fact concerning the character or quality of the manufacturer's product;

(2) that the product did not conform to that representation;

(3) that the plaintiff justifiably relied on that representation; and

(4) that the plaintiff's reliance on the representation was the direct and proximate cause of the plaintiff's injuries.

[5] Viewing the appellants' complaint in light of the above elements and liberally construing the appellants' allegations as required by Civ.R. 12(C), we find the appellants have alleged the following:

(1) that Miller made representations in its advertisements that its beer was safe and "an enhancer of the quality of life," when in fact its beer has many hazardous and addictive qualities;

(2) that Miller's representations negated and neutralized any common knowledge within the community about the dangers of beer consumption;

(3) that based on these representations, the appellants consumed Miller beer; and

(4) that their consumption of Miller beer proximately caused their alcoholism and the attendant emotional, criminal, and social problems associated with that

disease.[2]

In essence, the appellants are advancing what some courts have described as a nullification theory. Under this theory, a manufacturer is liable for injuries caused by a product's known dangers if the manufacturer, through its advertised representations, unrealistically minimizes the known dangers or implies that the dangers do not exist. The argument posited is that the manufacturer's affirmative representation that the product is safe despite the known dangers may act to nullify either the product's warnings or the consumer's knowledge about the product's known dangers. See *Malek, supra,* 749 S.W.2d at 526 (Evans, C.J., dissenting); *Hon v. Stroh Brewery Co.* (C.A.3, 1987), 835 F.2d 510, 514–515; 63 American Jurisprudence 2d (1984) 435, Products Liability, Section 349. Given the allegations in this case, we do not need to expressly address the validity of this nullification theory. Rather, even if we assume *arguendo* that Ohio courts would approve of such a theory, the appellants' allegations still fail to state a claim upon which relief can be granted.

Accepting as true the appellants' allegation that Miller represented through its advertising that its beer was "an enhancer of the quality of life," we must determine if that representation could be shown to have negated or neutralized the common knowledge that prolonged and excessive consumption of alcohol could lead to alcoholism. We begin our analysis with the alleged representation.

In their brief, the appellants argue that Miller's advertising subconsciously induces people to use its product by "showing Miller [beer] to be a product that enhances life, by it being depicted as socially acceptable, [and] that it is a positive activity, attractive and harmless." The appellants also cite a footnote in *McGuire, supra,* 814 S.W.2d at 388, fn. 5, in which the Texas Supreme Court noted:

"Obviously, there is a certain irony in the 'common knowledge' defense. Because the pervasive danger of alcoholism from prolonged and excessive consumption of alcoholic beverages is so well known, Seagram has no duty to warn or instruct. However, while Seagram argues that the danger of alcoholism is a matter of common knowledge such that it had no duty to warn or instruct, it continues to spend billions of dollars advertising the consumption of alcoholic beverages as a particularly positive activity. See Note, 58 So.Cal.L.Rev. 1107 (1985): 'There is * * * substantial evidence that alcohol commercials do encourage alcohol use. By presenting drinkers in carefree social and sexual situations,

---

**2.** R.C. 2307.77 expressly provides that a product can be defective "even though its manufacturer did not act fraudulently, recklessly, or negligently in making the [nonconforming] representation." Thus, it was not necessary for the appellants to plead fraudulent conduct in their complaint.

alcohol commercials connote the harmlessness and acceptability of alcoholic beverages and suggest that alcohol consumption is a particularly positive activity. This visual barrage of attractive and seductive messages infiltrates the audience's consciousness and creates an unconscious presumption in favor of drinking.' *Id.* at 1121–22 (footnotes omitted)."

In this case, we agree with the appellants that Miller uses advertising to induce people to use its product. That is, of course, the purpose of advertising. However, we do not agree that showing beer consumption in a positive light or as a positive activity has the effect of negating basic common knowledge that prolonged and excessive beer consumption can lead to alcoholism. We find Comments *i* and *j* of Restatement Section 402A to be particularly illuminating and persuasive in this regard.

Comment *i* provides that "the [product] sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with ordinary knowledge common to the community as to its characteristics. Good whiskey is not unreasonably dangerous merely because it will make some people drunk, [or] is especially dangerous to alcoholics; but bad whiskey, containing a dangerous amount of fusel oil, is unreasonably dangerous." 2 Restatement of the Law 2d, Torts (1965) 352, Section 402A. Comment *j* further provides that "a seller is not required to warn with respect to products, or ingredients in them, which are only dangerous, or potentially so, when consumed in excessive quantity, or over a long period of time, when the danger, or potentiality of danger, is generally known and recognized. Again the dangers of alcoholic beverages are an example * * *." *Id.* at 353.

Applying these principles to the facts in this case, the ordinary consumer possesses the common knowledge that "good" beer is not unreasonably dangerous unless it is consumed in excess. Viewed another way, the ordinary consumer recognizes that beer is safe if used in moderation. Accordingly, if Miller's alleged representations encouraged only moderate beer consumption, those representations would not be actionable as a matter of law because they would conform to the generally recognized view that moderate beer use is safe and acceptable. Under the appellants' nullification argument, therefore, the appellants could successfully state a claim upon which relief could be granted only if they alleged representations by Miller which encouraged prolonged and excessive beer use and which additionally suggested that such prolonged and excessive use was safe despite the known dangers.

The appellants alleged in their complaint that Miller represented regular beer consumption as "an enhancer of the quality of life." That representation, although subjective, does not deviate from the common knowledge that moderate beer consumption is safe and acceptable and often can be an enjoyable experience

for some people. The appellants' complaint does not identify or implicate any other representations by Miller that would suggest Miller encouraged prolonged and excessive beer use or represented that such use was safe despite the known dangers. The appellants, consequently, have failed to allege an essential element of their claim: an actionable representation.

Moreover, even if the appellants had identified a representation by Miller to the effect that prolonged and excessive beer consumption was safe, the appellants could not have justifiably relied on that representation as a matter of law. The determination of whether a party's reliance on a manufacturer's representation is justified involves an objective standard. The court must ask whether a reasonable consumer, possessing knowledge about the manufacturer's product that is common to the community, could have justifiably relied on the manufacturer's alleged representation concerning the character or quality of that product.

A common awareness and understanding of the dangers associated with prolonged and excessive alcohol use has existed in our culture for centuries. *McGuire,* 814 S.W.2d at 388. Our nation continues to inform its citizens of those dangers, supporting the community's common knowledge with well-documented and highly publicized scientific and statistical information that repeatedly warns of the detrimental physical, psychological, and emotional effects caused by prolonged and excessive alcohol use. Even though we acknowledge that beer advertising is pervasive in our society, we hold that, as a matter of law, a beer manufacturer's commercial images, although enticing, are not enough to neutralize or nullify the immense body of knowledge a reasonable consumer possesses about the dangers of alcohol. Therefore, a reasonable consumer could not, as a matter of law, ignore basic common knowledge about the dangers of alcohol and justifiably rely upon beer advertisements and their idyllic images to conclude that the prolonged and excessive use of alcohol is safe and acceptable. See, also, *Smith v. Anheuser–Busch, Inc.* (R.I.1991), 599 A.2d 320, 321; *Gunsalus v. Celotex Corp.* (E.D.Pa.1987), 674 F.Supp. 1149, 1159–1160. The appellants' assignment of error is overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

COOK and DICKINSON, JJ., concur.