**CHIC PROMOTION, INC., Appellant,**

v.

**MIDDLETOWN SECURITY SYSTEMS, INC.; Ademco, Appellee.**

[Cite as *Chic Promotion, Inc. v. Middletown Sec.
Sys., Inc.* (1996), 116 Ohio App.3d 363.]

Court of Appeals of Ohio,
Twelfth District, Butler County.

No. CA96–06–109.

Decided Dec. 9, 1996.

*Scheper & McGowan* and *Jack C. McGowan,* for appellant.

*Rindigs, Fry, Kiely & Dennis, Edward R. Goldman* and *Ralph F. Mitchell,* for appellee.

KOEHLER, Judge.

Plaintiff-appellant, Chic Promotions, Inc., appeals a decision of the Butler County Common Pleas Court granting summary judgment in favor of defendant-appellee, Ademco, a division of Pittway Corporation. We affirm.

Appellant is a Hamilton, Ohio corporation engaged in the buying and selling of jewelry at wholesale and retail. The corporation does business from a building

located at 11 Rowe Court, Hamilton, Ohio. In August 1991, after some prompting from an insurance agent to upgrade the building's security system, appellant's vice-president, Gary Hubbard, called Middletown Security, Inc.[1] for an estimate on a new security system.[2] Middletown Security sales representative Oral Duncan made a sales call to appellant's premises and met with Gary Hubbard. Appellant's president, Gary Hubbard's wife, Tedi Hubbard, was not present during this meeting.

Duncan made a sketch of the premises and spoke with Gary Hubbard about what type of equipment could be placed at various locations in the building. Duncan indicated to Gary Hubbard that the proposed system was a phone-monitored system, in that Middletown Security's central office would monitor the system for alarms via appellant's telephone line.

Along with a proposal for a security system, Duncan gave Gary Hubbard a sales brochure for the Vista XM security system manufactured by Ademco. The Vista XM control panel and key pad comprised two of the ten components in the security system recommended by Duncan. Tedi Hubbard approved the purchase of the security system after talking with Gary Hubbard and reviewing the product literature. Middletown Security installed the security system at appellant's location on August 29, 1991.

In April 1992, burglars bypassed appellant's security system by cutting the phone line and disabling the exterior siren. Appellant sustained a loss of jewelry, cases, and equipment as a result of the burglary. Appellant subsequently filed a product liability suit against Middletown Security and against Ademco as a component manufacturer. Ademco filed a motion for summary judgment, arguing that its sales brochure statements did not constitute an express warranty and that the Ademco components were functioning properly on the night of the burglary.

The trial court granted Ademco's motion, concluding that there was "no defect in the ADEMCO product which proximately caused the burglar alarm system to fail," and:

"The sales brochure, in this case, does not create an express warranty, and even if it did, there is no evidence presented from which any reasonable trier of fact could find that there was a breach of the express warranty which proximately caused the damages claimed by the plaintiff [appellant]."

---

1. Middletown Security, Inc. was a defendant in the proceedings below but is not a party to this appeal.

2. The existing security system was an AudioVox phone-monitored system which Gary Hubbard installed on the premises.

Appellant raises the following as its sole assignment of error on appeal:

"The trial court erred to the prejudice of plaintiff-appellant in granting the motion for summary judgment of the defendant-appellee where triable issues of express warranty and proximate cause existed based upon a sales pamphlet upon which plaintiff-appellant relied."

Pursuant to Civ.R. 56(C), summary judgment is properly granted when it is shown that there is no genuine issue of material fact, that the movant is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion, which is adverse to the nonmovant. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47. The evidence must be construed most strongly in favor of the nonmovant. *Bowen v. Kil–Kare, Inc.* (1992), 63 Ohio St.3d 84, 88, 585 N.E.2d 384, 389.

Once the moving party has satisfied its initial burden to show that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law, the nonmoving party must "produce evidence on any issue for which that party bears the burden of production at trial." *Wing v. Anchor Media, Ltd.* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus.

■ Appellant argues first that the components manufactured by Ademco were defective because they did not conform to the representations made in the sales brochure. Pursuant to R.C. 2307.73(A), a claimant may recover compensatory damages based upon a product liability claim if the claimant establishes by a preponderance of the evidence both that the product is defective because it did not conform to the manufacturer's representation and that the defect proximately caused the harm for which the claimant seeks damages.

R.C. 2307.77 provides:

"A product is defective if it did not conform, when it left the control of its manufacturer, to a representation made by that manufacturer. A product may be defective because it did not conform to a representation even though its manufacturer did not act fraudulently, recklessly, or negligently in making the representation."

■ A plaintiff seeking to recover under R.C. 2307.77 for injury from a product allegedly defective due to nonconformity with manufacturer's representations must prove:

"1.  that the manufacturer made a representation as to a material fact concerning the character or quality of the manufacturer's product;

"2.  that the product did not conform to that representation;

"3.  that the plaintiff justifiably relied on that representation;  and

"4. that the plaintiff's reliance on the representation was the direct and proximate cause of the plaintiff's injuries." *Gawloski v. Miller Brewing Co.* (1994), 96 Ohio App.3d 160, 165, 644 N.E.2d 731, 734.

Tedi Hubbard testified by deposition that she relied on representations in the Vista XM sales brochure such as the following:

"1. [T]he XM * * * can deliver security that's six times better than average.

"2. XM can be connected to a central security station that continually monitors your system * * *.

"3. XM is an electronic fortress of security safeguards.

"4. Any alarm * * * is directly relayed by wire or wireless to a central monitoring station.

"5. [Y]ou can have an uncompromisingly optimal security system * * * your dealer can select from an unprecedented variety of alarm responses customizing the system to your precise needs and operating circumstances.

"6. Ademco is the world's most respected name in security components * * *."

Tedi Hubbard testified that to her knowledge, the system could not operate as represented without a dedicated phone line.

Oral Duncan testified by deposition that he advised Gary Hubbard that the system was hooked into the phone line and that, if the line was cut, Middletown Security would not receive an alarm signal, although the exterior siren would still go off. Duncan also stated that at the time appellant's system was installed, Middletown Security did not have cellular backup available for telephone line monitoring.

Gary Hubbard recalled at deposition that Duncan told him that the system was a "phone monitored system." In reference to appellant's current security system installed by another company after the burglary, the following exchange occurred:

"Q. [By Ademco counsel Edward Goldman] What happens if somebody cuts the dedicated phone line?

"A. [By Gary Hubbard] I honestly couldn't tell you. I haven't had anybody cut it.

"Q. Did you ask the question?

"A. I'm sure I did. I'm sure I did.

"Q. Well, if you did, do you know what answer you got?

"A. I really don't remember what he told me. I think he told me that it was monitored through their home office. About the same thing that Mr. Duncan told me."

Considering the factors enumerated in *Gawloski*, 96 Ohio App.3d at 165, 644 N.E.2d at 734–735, and construing the evidence most favorably to appellant, we find that even assuming that the Ademco sales brochure failed to recommend a dedicated line and that that omission amounted to a misrepresentation of the product on which appellant relied, appellant has failed to set forth specific facts establishing that the lack of a dedicated telephone line was the proximate cause of appellant's injury. See *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264, 273–274 (if moving party satisfies initial burden of demonstrating lack of evidence to support nonmoving party's claim, nonmoving party has reciprocal burden under Civ.R. 56[E] to set forth specific facts showing a genuine issue for trial). Given appellant's failure to come forward with an essential element of its prima facie case, appellant's argument that the security system was defective under R.C. 2307.77 is not well taken.

■ Second, appellant argues that the Ademco sales brochure constitutes an express warranty under R.C. 1302.26(A)(1) and (2), which provide:

"(A) Express warranties by the seller are created as follows:

"(1) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

"(2) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description."

■ Where there is an express warranty, the ultimate consumer may recover even with an absence of direct privity of contract. *Rogers v. Toni Home Permanent Co.* (1958), 167 Ohio St. 244, 4 O.O.2d 291, 147 N.E.2d 612, paragraph three of the syllabus. In *Rogers*, however, the Ohio Supreme Court also stated:

"Many of these manufactured articles are shipped out in sealed containers by the manufacturer, and the retailers who dispense them to the ultimate consumers *are but conduits or outlets through which the manufacturer distributes his goods*. The consuming public ordinarily relies *exclusively* on the representations of the manufacturer in his advertisements." (Emphasis added.) *Id.* at 248, 4 O.O.2d at 294, 147 N.E.2d at 615.

Further, R.C. 1302.26(B) provides that "an affirmation merely of the value of the goods or a statement purporting to be * * * the seller's opinion or commendation of the goods does not create a warranty."

In this case, Ademco clearly anticipated consumer contact with a dealer, as opposed to the retailer being a mere conduit for goods which left the manufacturer in sealed packaging. This is reinforced by a boldface heading in the Ademco brochure which states, "Talk it over with a professional."

In addition, the substantive advertising claims in the brochure speak in terms of what the Vista XM "can" do, and the text indicates that "your dealer can select from a variety of alarm responses, customizing the system * * *." The brochure does not describe any particular configuration, but is a general description of the various components of the system and their utilization. The phrase "fortress of security" does not appear within the text of the brochure, but in a large headline on one page.

We find in this case that reasonable minds could only conclude that Ademco's assertions in the Vista XM sales brochure did not cross the line from puffing to warranty. The brochure was a presale inducement to people to purchase the Ademco product, which is the very purpose of advertising. *Gawloski*, 96 Ohio App.3d at 167, 644 N.E.2d at 735–736. Further, Gary Hubbard was a relatively sophisticated consumer, having previously purchased a basic phone-monitored security system for the business which he installed himself. Appellant's argument as to express warranty through the sales brochure is not well taken.

Finally, appellant argues that the Ademco components were defective because Ademco failed to warn in its literature that the system would not live up to its attributes without a dedicated phone line.[3] Ademco provided inadequate warnings if it knew or by exercising ordinary care reasonably should have known of a risk associated with the product and failed to take reasonable precautions against the risk. R.C. 2307.76(A)(1); *Crislip v. TCH Liquidating Co.* (1990), 52 Ohio St.3d 251, 257, 556 N.E.2d 1177, 1182–1183. The standard of care is identical whether applied in strict products liability or negligence. *Id.*

---

**3.** R.C. 2307.76(A) provides:

"Subject to divisions (B) and (C) of this section, a product is defective due to inadequate warning or instruction if either of the following applies:.

"(1) It is defective due to inadequate warning or instruction at the time of marketing if, when it left the control of its manufacturer, both of the following applied:

"(a) The manufacturer knew or, in the exercise of reasonable care, should have known about a risk that is associated with the product and that allegedly caused harm for which the claimant seeks to recover compensatory damages;

"(b) The manufacturer failed to provide the warning or instruction that a manufacturer exercising reasonable care would have provided concerning that risk, in light of the likelihood that the product would cause harm of the type for which the claimant seeks to recover compensatory damages."

In this case, appellant was aware that the security system it was purchasing was a phone-monitored system. The system that it replaced was also phone-monitored and did not have a dedicated phone line. At the time the system was installed, Middletown Security did not have cellular backup or remote telephone line monitoring capability.

Ademco provided a general warning with its equipment that stated that the telephone lines used to carry the alarm signals could be subject to compromise or could be out of service. Middletown Security acknowledged receiving the user's manual containing the warning because it acknowledged that it provided the manual to appellant with the system.

Ultimately, as we stated in response to appellant's first argument, appellant did not put forth any evidence that the lack of a dedicated telephone line proximately caused the harm for which appellant seeks recovery in this case. Therefore, we hold that the product was not defective due to an inadequate warning. See *Brown v. McDonald's Corp.* (1995), 101 Ohio App.3d 294, 299, 655 N.E.2d 440, 443 (to recover for defective product due to lack of or inadequate warning, plaintiff must show that the injury proximately resulted from breach of a duty to warn).

Construing the evidence most favorably to appellant, reasonable minds could not differ in concluding that the Vista XM was not defective and that the manufacturer's sales brochure did not constitute an express warranty. Therefore, summary judgment was appropriate in this case, and the assignment of error is overruled.

*Judgment affirmed.*

WILLIAM W. YOUNG, P.J., and POWELL, J., concur.