SUTTON, Appellant,

v.

**TOMCO MACHINING, INC., Appellee.**

[Cite as *Sutton v. Tomco Machining, Inc.*, 186 Ohio App.3d 757, 2010-Ohio-830.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 23416.

Decided March 5, 2010.

Jeffrey M. Silverstein & Associates, Jeffrey M. Silverstein, and Jason P. Matthews, for appellant.

J. Hollingsworth & Associates, LLC, and Jonathan Hollingsworth, for appellee.

BROGAN, Judge.

## I

{¶ 1} On the morning of April 14, 2008, DeWayne Sutton was working at Tomco Machining, disassembling a chop saw, when he injured his back.[1] Sutton went to Tomco's president, Jim Tomasiak, and told him about his injury. Within an hour of talking with Tomasiak, Tomasiak discharged Sutton from his employment as an at-will employee. Tomasiak gave Sutton no affirmative reason for discharging him, but he did tell Sutton that it was not because of his work ethic or job performance or because Sutton had violated any work rule or company policy. Following his discharge, Sutton filed a claim for workers' compensation benefits, ultimately receiving them. On July 1, 2008, Sutton sent a letter to Tomco telling it of his intent to file a claim under R.C. 4123.90, which prohibits an employer from retaliating against an employee for filing a claim or initiating proceedings under the Workers' Compensation Act.

{¶ 2} On September 18, 2008, Sutton filed a complaint against Tomco alleging that Tomco discharged him in order to avoid Sutton's being considered its employee when he filed for workers' compensation so as to prevent potential higher workers' compensation premiums. In his complaint, Sutton asserted two claims for relief. The first is a statutory claim for unlawful retaliation against Sutton under R.C. 4123.90 for initiating or pursuing workers' compensation benefits. And the second is a tort claim for wrongful discharge in violation of public policy.

{¶ 3} Tomco filed on December 9, 2008, a motion under Civ.R. 12(C) for judgment on the pleadings. It claimed that Sutton had not alleged facts that if true would entitle him to relief based on either claim. The trial court agreed and on April 15, 2009, sustained Tomco's motion. Sutton filed a timely notice of

---

1. The facts we recite in this opinion are taken from Sutton's complaint. We will consider them true for the purposes of our review. See *Perez v. Cleveland* (1993), 66 Ohio St.3d 397, 399, 613 N.E.2d 199.

appeal, and he now presents two assignments of error, one for each claim in his complaint.

## II

### First Assignment of Error

{¶ 4} "The trial court erred in finding that *Bickers* precluded appellant from pursuing a public policy wrongful discharge claim."

{¶ 5} Before exploring the issue raised here, we must explain the standard we will use to review the trial court's decision to sustain Tomco's Civ.R. 12(C) motion for judgment on the pleadings. When the nonmoving party can prove a set of facts entitling him to his requested relief under the law, a trial court ought not grant a Civ.R. 12(C) motion for judgment on the pleadings. We will review the trial court's decision de novo. *Pinkerton v. Thompson*, 174 Ohio App.3d 229, 2007-Ohio-6546, 881 N.E.2d 880, at ¶ 18, citing *Hunt v. Marksman Prod.* (1995), 101 Ohio App.3d 760, 762, 656 N.E.2d 726. And we will accept as true the alleged material facts in Sutton's complaint and all reasonable inferences drawn from them. Id., citing *Gawloski v. Miller Brewing Co.* (1994), 96 Ohio App.3d 160, 163, 644 N.E.2d 731. We will reverse the trial court's decision if we conclude that the law permits Sutton to bring the claim and he has alleged facts that, when the law is applied, entitle him to the relief he seeks. See *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.* (1992), 65 Ohio St.3d 545, 548, 605 N.E.2d 378.

{¶ 6} The issue raised by Sutton in the first assignment of error is one of first impression: when an employee suffers a work-related injury, tells his employer of the injury, and is discharged before having had an opportunity to file a claim or institute or pursue proceedings under the Workers' Compensation Act, does the law allow the former employee to bring a common-law claim against his former employer for wrongful discharge in violation of the public policy underlying R.C. 4123.90? We conclude that a narrow exception to the employment at-will doctrine exists in this situation, allowing such a plaintiff to bring the tort claim, because such a discharge would undermine the General Assembly's effort to proscribe retaliatory discharges.

{¶ 7} Tomco argues first that the Ohio Supreme Court's opinion in *Bickers v. W. & S. Life Ins. Co.*, 116 Ohio St.3d 351, 2007-Ohio-6751, 879 N.E.2d 201, bars Sutton's common-law claim, and it argues second that even if it does not, the law does not allow such a claim.

{¶ 8} Under the employment at-will doctrine in Ohio the law generally does not provide relief to at-will employees who are discharged without good

cause. However, in *Greeley v. Miami Valley Maintenance Contrs., Inc.* (1990), 49 Ohio St.3d 228, 551 N.E.2d 981, the Ohio Supreme Court carved out an exception for discharges based on reasons inimical to public policy. Employees discharged for such reasons may bring a common-law claim for wrongful discharge in violation of public policy. A plaintiff must establish a prima facie claim based on the four elements, adopted by the court in *Collins v. Rizkana* (1995), 73 Ohio St.3d 65, 69–70, 652 N.E.2d 653, that constitute the tort of wrongful discharge:

{¶ 9} "1. That a clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the *clarity* element).

{¶ 10} "2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the *jeopardy* element).

{¶ 11} "3. The plaintiff's dismissal was motivated by conduct related to the public policy (the *causation* element).

{¶ 12} "4. The employer lacked overriding legitimate business justification for the dismissal (the *overriding justification* element)."

{¶ 13} The first two elements are questions of law to be decided by the court, and the last two are questions of fact, decided by the fact-finder. See *Collins* at 70, 652 N.E.2d 653.

{¶ 14} The Workers' Compensation Act proscribes retaliation for filing a workers' compensation claim in R.C. 4123.90, which provides, "No employer shall discharge, demote, reassign, or take any punitive action against any employee because the employee filed a claim or instituted, pursued or testified in any proceedings under the workers' compensation act." Sutton cannot claim that Tomco violated this section by discharging him, because Sutton had not yet filed a claim or instituted proceedings before Tomco discharged him. After reviewing Ohio law on the legality of a common-law claim under this section, we note that a plaintiff was permitted to bring such a claim under this section for discharge in retaliation for his wife's pursuit of workers' compensation on her own behalf. See *Collins v. U.S. Playing Card Co.* (S.D.Ohio, 2006), 466 F.Supp.2d 954. The *Collins* court noted that although the Ohio Supreme Court had not decided the question, several Ohio appellate courts that had considered the issue recognized a common-law claim for wrongful discharge based on this statute. Id. at 974 (citing six Ohio appellate-court cases). The court cited one contrary decision. Id. at 974. It also found that several Ohio district courts have analyzed Ohio law and concluded that such a common-law claim exists. Id. (citing four federal-district-court cases). It did find an unpublished Sixth Circuit Court of Appeals decision

to the contrary, but the court noted that such unpublished opinions are not binding upon it. Id. at 974–975.

{¶ 15} The question is whether in the circumstances of this case, Sutton may bring a common-law claim against Tomco for violating the public policy that underlies R.C. 4123.90. Because the Ohio Supreme Court has not decided this question, to find the answer, we must examine each of the four elements of this claim.

*The clarity element*

{¶ 16} The first element requires a manifest public policy. R.C. 4123.90 manifests a clear public policy against allowing an employer to discharge an employee solely in retaliation for filing a workers' compensation claim. This public policy is also expressed in *Coolidge v. Riverdale Local School Dist.,* 100 Ohio St.3d 141, 2003-Ohio-5357, 797 N.E.2d 61. The court explained there that "[t]he recognition of a public-policy exception for wrongful discharge in retaliation for filing a workers' compensation claim, *whether derived from statutory or common law,* is built on the premise that inability to challenge retaliatory discharges would undermine the purpose of the workers' compensation statute by forcing the employee to choose between applying for the benefits to which he is entitled and losing his job." *Coolidge* at ¶ 43.

*The jeopardy element*

{¶ 17} The second element requires that the circumstances of the discharge jeopardize this public policy. Under the jeopardy element, we must determine whether the absence of a public-policy claim "would seriously compromise the Act's statutory objectives." *Wiles v. Medina Auto Parts,* 96 Ohio St.3d 240, 2002-Ohio-3994, 773 N.E.2d 526, at ¶ 14 (referring to the Family Medical Leave Act). Permitting an employer to dismiss an employee before the latter has an opportunity to obtain the protections of R.C. 4123.90 would seriously compromise the act's statutory objectives by giving employers a perverse incentive to discharge the injured employee before he had the opportunity to trigger the protection of R.C. 4123.90.

{¶ 18} We must also "inquir[e] into the existence of any alternative means of promoting the particular public policy to be vindicated by a common-law wrongful-discharge claim." *Wiles* at ¶ 15. Because the sole source of the public policy here is R.C. 4123.90, which provides the substantive right and remedies for its breach, we must examine the adequacy of the remedies available. See *Wiles v. Medina Auto Parts* at ¶ 15 ("Where * * * the sole source of the public policy opposing the discharge is a statute that provides the substantive rights *and* remedies for its breach, the issue of adequacy of remedies becomes a particularly important component of the jeopardy analysis"); see also *Bickers,* 116 Ohio St.3d

351, 2007-Ohio-6751, 879 N.E.2d 201, at ¶ 42 (Moyers, C.J., dissenting) ("public policy is jeopardized only when there are no alternative means of enforcing the public policy or, if a particular statute applies, the remedies therein are inadequate"). We find that an employee discharged under the circumstances in which Sutton was discharged has no remedy. No statutory remedy, therefore, adequately protects society's interests. See *Wiles* at ¶ 15 ("Simply put, there is no need to recognize a common-law action for wrongful discharge if there already exists a statutory remedy that adequately protects society's interests").

{¶ 19} The inability to bring a tort claim would frustrate the legislative intent of R.C. 4123.90 to proscribe retaliatory discharges. As we point out in our review of the second assignment of error, the Ohio Supreme Court has held that an injured employee need not actually file a claim in order to claim the protections of the statute. See *Roseborough v. N.L. Industries* (1984), 10 Ohio St.3d 142, 143, 10 OBR 478, 462 N.E.2d 384. In *Roseborough* the court adopted the reasoning of Justice Brown's concurrence in *Bryant v. Dayton Casket Co.* (1982), 69 Ohio St.2d 367, 23 O.O.3d 341, 433 N.E.2d 142. There, Justice Brown expressed his concern that "a requirement that an actual filing of a claim is the only means by which a proceeding can be instituted or pursued would frustrate the legislative intent as evinced in R.C. 4123.90." *Bryant* at 372, 23 O.O.3d 341, 433 N.E.2d 142 (Brown, J., concurring). "If such a requirement was mandated," he continued, "an employer could, upon receipt of an employee's request to complete the form prior to filing, fire the claimant and thus avoid the consequences of R.C. 4123.90. * * * [S]uch a requirement would also result in a footrace, the winner being determined by what event occurs first—the firing of the employee or the filing of the claim with the bureau." *Bryant* at 372–373, 23 O.O.3d 341, 433 N.E.2d 142 (Brown, J., concurring). He concluded, "This scenario, in light of the fact that R.C. 4123.95 provides that R.C. 4123.90 should be liberally construed in favor of the employee, should not be encouraged by a decision from this court." *Bryant* at 373, 23 O.O.3d 341, 433 N.E.2d 142 (Brown, J., concurring). The same is true here. Were a tort claim not permitted, an employer upon hearing that an employee was injured could fire the employee to avoid the consequences of R.C. 4123.90. The exact footrace that Justice Brown identified would result between the injured employee's running to file a claim or initiate proceedings and the employer's running to fire the employee. And the employer may have a head start: upon learning of the injury the employer can discharge the employee almost immediately; an employee may not have time to file a claim or initiate proceedings. The perverse incentive such a rule creates would most hurt those workers most likely to be injured and therefore most in need of the statute's protection. Those working in physically demanding jobs often have an inherently greater chance for injury.

*The causation element*

{¶ 20} The third element requires the dismissal to have been motivated by conduct related to that prohibited by the public policy. According to the facts alleged in Sutton's complaint, his dismissal was motivated by the nexus created by Sutton's on-the-job injury and the right of injured employees to workers' compensation. This is related to retaliatory discharge, prohibited by public policy.

*The overriding-justification element*

{¶ 21} The fourth element requires that the employer lacked business justification for the discharge. Sutton's complaint alleges that Tomco lacked any business justification for discharging him. As this is a question of fact, we accept, as we must, the allegation in the complaint as true.

*The narrow exception*

{¶ 22} Therefore we will recognize a very narrow exception to the at-will employment doctrine similar to the one recognized in *Moore v. Animal Fair Pet Ctr., Inc.* (1995), 81 Ohio Misc.2d 46, 674 N.E.2d 1269. The exception must be narrow because, ordinarily, "merely asserting that the discharge was in violation of a statutory right is insufficient." Cavico, Employment At Will and Public Policy (1992), 25 Akron L.Rev. 497, 514. A tort claim for wrongful discharge is "premised on protecting employees who actively pursue rights and benefits they are entitled to by virtue of statutes." Id. An employee is not compelled to exercise this right but has the option to do so. So when the injured employee delays in exercising his right, he may not avail himself of this exception. Yet where the injured employee is discharged before he has an opportunity to exercise this right, the public policy underlying R.C. 4123.90 requires courts to give him the chance to obtain relief. The court has noted that "[t]he basic purpose of any antiretaliation statute is to enable employees to freely exercise their rights without fear of retribution from their employers." *Coolidge* at ¶ 43. Were an employer permitted to discharge an employee to circumvent the antiretaliation statute, the basic purpose of the statute would be frustrated. Incorporating all four elements of the tort of wrongful discharge, we conclude that when an employee suffers a work-related injury he may bring a claim of wrongful discharge if his employer discharges him so quickly that he has no reasonable opportunity to file a claim or institute proceedings under the Workers' Compensation Act when the employer lacks an overriding business justification for the discharge.

{¶ 23} Here, the material allegations in Sutton's complaint satisfy the requirements of the exception. First, Sutton was discharged so quickly after being

injured that he had no reasonable opportunity to exercise his rights under the Workers' Compensation Act. In Sutton's complaint he states:

{¶ 24} "3. On or about April 14, 2008, at approximately 7:30 a.m., Plaintiff injured his back while disassembling a chop saw. Plaintiff's injury occurred during the course and within the scope of his employment with Defendant.

{¶ 25} "4. Plaintiff reported his injury to Jim Tomasiak * * *, Defendant's President.

{¶ 26} "5. Within approximately one hour of reporting the injury to Tomasiak, Plaintiff's employment was terminated."

{¶ 27} Although the complaint does not state the length of time between the injury and the report to Tomasiak, we think it is reasonable to infer that the second event came on the heels of the first. Sutton plainly had no reasonable opportunity to take the first step toward obtaining compensation benefits. Second, the allegation is that Tomco discharged Sutton to avoid paying higher premiums, which we do not believe qualifies as an overriding business justification. The complaint alleges:

{¶ 28} "1. Plaintiff began his employment with Defendant on or about August 22, 2005.

{¶ 29} " * * *

{¶ 30} "6. Tomasiak did not provide Plaintiff a reason for terminating his employment; however, he stated that it was not due to Plaintiff's work ethic or job performance. Additionally, Tomasiak stated that Plaintiff did not violate any work rule or company policy.

{¶ 31} "7. Defendant used immediate termination as means to preclude Plaintiff's Workers Compensation injury claim and higher Workers Compensation premiums.

{¶ 32} " * * *

{¶ 33} "13. Defendant lacked an overriding business justification for terminating Plaintiff's employment.

{¶ 34} "14. Defendant's decision to terminate Plaintiff's employment was motivated by Plaintiff's workplace injury and in order to prevent him from filing of a workers compensation [sic]."

{¶ 35} Accepting these allegations as true for purposes of evaluating Tomco's Civ.R. 12(C) motion, we find that the facts alleged in Sutton's complaint, if true, entitle him to his requested relief, meaning that the trial court erred in sustaining Tomco's motion.

{¶ 36} Tomco argues that the trial court correctly concluded that in *Bickers v. W. & S. Life Ins. Co.*, 116 Ohio St.3d 351, 2007-Ohio-6751, 879 N.E.2d 201, the court barred all common-law tort claims of wrongful discharge under the Workers' Compensation Act. We disagree. We find that *Bickers*'s holding does not encompass Sutton's claim, because the policy at issue there differs from the one here.

{¶ 37} Unlike Sutton, the plaintiff in *Bickers* was discharged for nonretaliatory reasons while she was receiving workers' compensation benefits. She was injured in 1994 and filed a claim for workers' compensation soon after. Because of the injury, she was unable to work for stretches of time. The employer did not discharge her until 2002, a decision based primarily on Bickers's inability to do her job effectively. The issue in *Bickers* was "whether the tort of wrongful discharge in violation of public policy applies to a nonretaliatory discharge of an injured worker receiving workers' compensation benefits." *Bickers* at ¶ 1. The court held that "[a]n employee who is terminated from employment while receiving workers' compensation has no common-law cause of action for wrongful discharge in violation of the public policy underlying R.C. 4123.90, which provides the exclusive remedy for employees claiming termination in violation of rights conferred by the Workers' Compensation Act." Id. at the syllabus. Sutton's claim falls outside this holding. Sutton was not discharged by Tomco "while receiving" compensation benefits. Nor had Sutton filed a claim before he was discharged.

{¶ 38} In *Bickers*, the court barred only common-law tort claims of wrongful discharge when the discharge is for reasons that are not retaliatory. The discharge of an employee while the employee is receiving compensation benefits, like the plaintiff in *Bickers*, is not prohibited, because it is not retaliatory. The policy choice in *Bickers* is "between permitting and prohibiting the discharge from employment of an employee who has been injured at work." *Bickers* at ¶ 20. Deny employers the ability to discharge injured workers by requiring them to hold open such workers' jobs indefinitely and "employers will be burdened with employees unable to perform the work for which they were hired and an inability to obtain permanent replacements." Id. at ¶ 21. But permit employers to terminate workers who are injured and cannot work as a result and "worker[s] suffer[ ] not only the burden of being injured but also the burden of unemployment at a time when seeking a new position is made more difficult by the injury." Id. at ¶ 22. *The choice* of the General Assembly, reflected in R.C. 4123.90, was "to proscribe retaliatory discharges only." Id. at ¶ 23. Deferring to the General Assembly's choice, the court said that "[i]t is within the prerogative and authority of the General Assembly to make *this choice*." (Emphasis added.) Id. "We," the court continued, "may not override *this choice* and superimpose a common-

law, public policy tort remedy on this wholly statutory system." (Emphasis added.) Id. Also, "it would be inappropriate for the judiciary to * * * supplant *the policy choice* of the legislature." (Emphasis added.) Id. at ¶ 24. Finally, said the court, "the imposition of common-law principles of wrongful discharge into the workers' compensation arena runs counter to the balance of mutual compromise between the interests of the employer and the employee as [the balance represented by *this choice* is] expressed by the General Assembly within the Act." Id. "Bickers's remedy," concluded the court, "must be found within the workers' compensation statutes." Id. at ¶ 25.

{¶ 39} The General Assembly's *policy choice* discussed by the court in *Bickers* is not the policy choice raised here. Tomco is entirely correct when it says that the public policy embodied by R.C. 4123.90 does not extend beyond the language of the statute. This is why the court barred common-law claims for wrongful discharge under this statute when the plaintiff was discharged "while receiving workers' compensation." Such a plaintiff undoubtedly filed a claim but was not "discharged for retaliatory reasons." A discharge in these circumstances does not jeopardize the public policy of the statute, which proscribes only retaliatory discharges. Conversely, a discharge under the circumstances of this case does directly threaten this public policy by allowing an employer to prevent an employee from obtaining protection against retaliation.

{¶ 40} To be sure, we do not mean to suggest that Sutton will or should prevail on his claim. Rather, we conclude only that neither *Bickers* nor other law bars Sutton from bringing the claim. However, "[i]n order to prevail on his claim, [Sutton] must carry his burden to prove the remaining elements of a wrongful-discharge claim." *Dohme v. Eurand Am., Inc.*, 170 Ohio App.3d 593, 2007-Ohio-865, 868 N.E.2d 701, ¶ 38.

{¶ 41} The first assignment of error is sustained.

### Second Assignment of Error

{¶ 42} "The trial court erred in finding that appellant's actions were insufficient to constitute the institution or pursuance of a claim under R.C. § 4123.90."

{¶ 43} Here Sutton alleges that the trial court erred by finding that he may not bring a statutory claim. Sutton argues that if we conclude that the Ohio Supreme Court's decision in *Bickers* does bar his tort claim, as the trial court concluded, we should construe the statutory words "pursued" and "instituted" more broadly than they were construed before *Bickers*. Sutton contends that his act of reporting the injury constituted "pursuit" under the statute. Without a broader understanding of these words, Sutton asserts, the intent of R.C. 4123.90 will be undermined by employers immediately discharging employees after they report an injury.

{¶ 44} In the first assignment of error we concluded that *Bickers* does not bar Sutton's tort claim. And we there addressed Sutton's concern about undermining the statute's intent. Finally, Sutton cites no authority for the contention that reporting an injury satisfies the statute, nor does he provide an argument for why reporting his injury satisfies the statute in this case. Thus, the complaint does not allege that before being discharged, Sutton took any action that could be construed as filing a claim or instituting or pursuing proceedings under the Workers' Compensation Act.

{¶ 45} The second assignment of error is overruled.

## III

{¶ 46} We overruled the second assignment of error regarding Sutton's claim based on Tomco's violation of R.C. 4123.90, so we do not disturb this part of the trial court's judgment. But we sustained the first assignment of error regarding Sutton's claim for wrongful discharge, so we reverse the court's judgment regarding this claim. Therefore, the trial court's judgment is reversed, and the cause is remanded for further proceedings.

Judgment reversed
and cause remanded.

FROELICH, J., concurs.

DONOVAN, P.J., dissents.

DONOVAN, Presiding Judge, dissenting.

{¶ 47} I disagree. I do not believe that we are at liberty to overrule the syllabus of a Supreme Court opinion that is on point, i.e., *Bickers v. W. & S. Life Ins. Co.*, 116 Ohio St.3d 351, 2007-Ohio-6751, 879 N.E.2d 201. As an appellate court, we are bound by S.Ct.R.Rep.Op. 1. S.Ct.R.Rep.Op. 1(B)(1) and (2) indicate: "(1) The law stated in a Supreme Court opinion is contained within its syllabus (if one is provided), and its text, including footnotes"; "(2) If there is disharmony between the syllabus of an opinion and its text or footnotes, the syllabus controls." Nothing in the *Bickers* syllabus indicates that the rule of law contained therein applies only to nonretaliatory discharges.

{¶ 48} I would agree with the trial court the claim is barred based upon the *Bickers* holding, which we are not free to modify. I would affirm.