PINKERTON, Appellee and Cross–Appellant,

v.

THOMPSON et al., Appellants and Cross–Appellees.

[Cite as Pinkerton v. Thompson, 174 Ohio App.3d 229, 2007-Ohio-6546.]

Court of Appeals of Ohio,
Ninth District, Lorain County.

No. 06CA008996.

Decided Dec. 10, 2007.

---

Louis J. Licata and David J. Kovach, for appellee and cross-appellant.

Timothy J. Fitzgerald and Marc A. Sanchez, for appellants and cross-appellees.

CARR, Judge.

{¶ 1} Defendants-appellants and cross-appellees, Robert Thompson and Envelope Mart of Northeast, Ohio, Inc. ("Envelope Mart"), appeal from a jury verdict in the Lorain County Court of Common Pleas. Plaintiff-appellee and cross-appellant, James D. Pinkerton, cross-appeals from the judgments of the trial court, which denied his employment intentional-tort claim and his retaliation claim. This court affirms in part and reverses in part.

I

{¶ 2} On June 4, 1999, Pinkerton injured his left hand and fingers while operating Envelope Mart's press machine. As a result of the injury, Pinkerton filed a workers' compensation claim and missed approximately 45 days of work. Envelope Mart continued to pay Pinkerton during his absence and kept Pinkerton's position open until he was able to return to work.

{¶ 3} Apart from his work-related accident, Pinkerton injured himself several other times during his employment with Envelope Mart. In March 1999, he fractured a finger on his right hand while punching the floor. In December 2000, he injured his left wrist and hand in an ATV accident. Both the March and December injuries required Pinkerton to wear a cast to work. Then, on April 2, 2001, Pinkerton again reported to work wearing a cast because he had reinjured his left wrist in another ATV accident. Pinkerton claimed that his injuries never interfered with his ability to perform his job as a press operator.

{¶ 4} On April 5, 2001, Pinkerton visited Dr. Robert Zanotti because of a pinching pain in his right shoulder. According to Pinkerton, the casts on his left arm forced him to use only his right arm at work, and the repetitive motions caused him to injure his right shoulder. Dr. Zanotti determined that the pain was work-related and gave Pinkerton a note to excuse him from work for two weeks. He also gave Pinkerton a Bureau of Workers' Compensation First Report of Injury ("FROI") form. Pinkerton went to work after his appointment with Dr. Zanotti and reported to Brian Thompson, Envelope Mart's head of production. As a result of this meeting, Pinkerton was "laid off indefinitely." On

May 29, 2001, Pinkerton filed a workers' compensation claim for his shoulder injury.

{¶ 5} On May 30, 2003, Pinkerton filed a complaint against Envelope Mart and its owner Robert Thompson (collectively "defendants"). The complaint consisted of the following three counts: (1) employer intentional tort ("Claim I"), based on Pinkerton's June 4, 1999 injury, (2) violation of the workers' compensation statute R.C. 4123.90 ("Claim II"), based on Pinkerton's April 2001 shoulder injury, and (3) wrongful discharge in violation of public policy as manifested in R.C. 4123.90 ("Claim III"). Due to the extensive procedural history in this case, we set forth each of Pinkerton's claims and their histories separately.

## Claim I

{¶ 6} In Claim I, Pinkerton alleged that defendants were liable for his press accident because they knew the machine was dangerous but chose not to install a safety guard on the machine. On June 22, 2004, Pinkerton moved for partial summary judgment as to Claim I only. On July 12, 2004, defendants also filed a motion for summary judgment and a brief in opposition to Pinkerton's motion. On August 6, 2004, Pinkerton filed a brief in opposition to defendants' summary judgment motion. Finally, on August 13, 2004, Robert Thompson filed his own motion for summary judgment, claiming that he could not be individually liable for any alleged intentional tort that Envelope Mart might have committed. On August 27, 2004, Pinkerton filed a brief in opposition to Thompson's motion. Thompson filed a reply brief on September 7, 2004.

{¶ 7} On September 10, 2004, the trial court issued its decision. The court awarded defendants summary judgment, finding that Pinkerton could not satisfy his burden under *Fyffe v. Jeno's, Inc.* (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108. The court reasoned that Pinkerton's injury stemmed from his refusal to follow defendants' safety instructions and that Pinkerton chose to assume the risk of adjusting the press rollers while the press was running. As a result of its ruling, the trial court denied Pinkerton's motion for summary judgment and found that Robert Thompson's individual motion for summary judgment was moot.

## Claim II

{¶ 8} In Claim II, Pinkerton alleged that defendants had terminated him as a result of his intention to file another workers' compensation claim, thereby violating the workers' compensation statute. On August 13, 2004, defendants filed a motion for summary judgment, arguing that Pinkerton should not be able to proceed on this claim as to his June 4, 1999 injury. In his August 23, 2004 brief in opposition, however, Pinkerton clarified that Claim II related only to his April 2001 shoulder injury and not to his June 1999 injury.

{¶ 9} On September 10, 2004, the trial court granted defendants summary judgment only as to the June 4, 1999 injury.[1] The court denied the motion as to the April 2001 shoulder injury and permitted Claim II to go forward.

{¶ 10} On March 7, 2005, the trial commenced. Although Claim II and Claim III were tried simultaneously, the parties understood that Claim II would be a bench decision and would not be submitted to the jury. On March 9, 2005, defendants filed a motion for a directed verdict on Claim II, arguing that Pinkerton did not have a valid claim, because Envelope Mart terminated him prior to his filing of his workers' compensation claim. On March 9, Robert Thompson also filed a motion for directed verdict as to Claim II, arguing that he could not be personally liable for those claims. The trial court denied the motions.

{¶ 11} On March 18, 2005, and after the jury's verdict on Claim III (discussed below), Pinkerton filed a motion for judgment on Claim II. On April 4, 2005, defendants filed a brief in opposition to the motion. On April 15, 2005, the trial court denied Pinkerton's motion. The court reasoned that R.C. 4123.90 does not support a cause of action when the complainant is terminated prior to the filing of the workers' compensation claim.

## Claim III

{¶ 12} In Claim III, Pinkerton alleged that defendants had violated public policy by wrongfully discharging him for exercising his rights under the workers' compensation statute. On October 12, 2004, defendants filed a motion for judgment on the pleadings, arguing that no separate public-policy cause of action for wrongful discharge exists under R.C. 4123.90, since the statute itself provides an effective remedy. On October 22, 2004, Pinkerton filed a brief in opposition to defendants' motion. On October 28, 2004, the trial court denied defendants' motion, finding that the Ohio Supreme Court has recognized a claim of wrongful discharge in violation of public policy and that R.C. 4123.90 alone would not provide Pinkerton an adequate remedy.

{¶ 13} As noted above, the trial commenced on March 7, 2005, with the understanding that only Claim III would be submitted to the jury at the trial's end. On March 9, 2005, Robert Thompson filed a motion for directed verdict as to Claim III, contesting his personal liability. The trial court denied the motion. Also on March 9, the jury returned a verdict in favor of Pinkerton, awarding him both compensatory and punitive damages.

---

1. In its journal entry, the trial court acknowledged Pinkerton's assurance that the June 4, 1999 injury was not a part of Claim II. However, out of an apparent abundance of caution, the trial court entered summary judgment as to that injury anyway.

{¶ 14} On March 18, 2005, Pinkerton filed a motion for pre- and postjudgment interest and costs. Defendants filed a brief in opposition to the motion. On April 7, 2005, defendants also filed motions for judgment notwithstanding the verdict, a new trial, and remittitur. On April 15, 2005, the trial court journalized the jury's verdict, entering judgment against defendants. On April 18, 2005, the court simultaneously denied defendants' motions for judgment notwithstanding the verdict and new trial and Pinkerton's motion for prejudgment interest and costs.

{¶ 15} On April 25, 2005, Pinkerton filed a motion for attorney fees, which was followed by defendants' brief in opposition. On May 20, 2005, the trial court awarded Pinkerton $79,329.50 in attorney fees.

**Appeal**

{¶ 16} Defendants appealed the jury's verdict and the trial court's rulings as to Claim III and the court's subsequent award of attorney fees. Pinkerton cross-appealed, challenging the trial court's entry of summary judgment on Claim I and the court's unfavorable decision on Claim II. On June 22, 2006, however, this court dismissed the entire appeal because the trial court had not properly entered judgment on Claim II. Accordingly, on August 18, 2007, the trial court entered a nunc pro tunc order awarding final judgment to defendants on Claim II. This appeal is now properly before the court. Defendants raise seven assignments of error, and Pinkerton raises two cross-assignments of error for our review.

## II

### ASSIGNMENT OF ERROR I

The trial court erred as a matter of law when it denied the appellants' motion for judgment on the pleadings thereby recognizing a claim for retaliatory discharge in violation of public policy based solely upon R.C. 4123.90.

{¶ 17} In their first assignment of error, defendants argue that the trial court erred in recognizing a claim for retaliatory discharge in violation of public policy. Specifically, defendants argue that they were entitled to judgment on the pleadings because a public policy cause of action pursuant to R.C. 4123.90 is not a viable claim. We agree.

{¶ 18} A Civ.R. 12(C) motion for judgment on the pleadings has been characterized as a belated Civ.R. 12(B)(6) motion for failure to state a claim upon which relief may be granted, and the same standard of review is applied to both motions. *Gawloski v. Miller Brewing Co.* (1994), 96 Ohio App.3d 160, 163, 644 N.E.2d 731. The trial court's inquiry is restricted to the material allegations in the pleadings. Id. Furthermore, the trial court must accept material allegations

in the pleadings and all reasonable inferences as true. Id. This court reviews such motions under the de novo standard of review. *Hunt v. Marksman Prod.* (1995), 101 Ohio App.3d 760, 762, 656 N.E.2d 726. We will not reverse a trial court's denial of a Civ.R. 12(C) motion unless when all the factual allegations of the complaint are presumed true and all reasonable inferences are made in favor of the nonmoving party, it appears beyond doubt that the nonmoving party cannot prove any set of facts entitling him to the requested relief. *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.* (1992), 65 Ohio St.3d 545, 548, 605 N.E.2d 378.

{¶ 19} In *Coon v. Technical Constr. Specialties, Inc.*, 9th Dist. No. 22317, 2005-Ohio-4080, 2005 WL 1875811, this court held that no public-policy tort exists for alleged violations of R.C. 4123.90. We later revisited our decision in *Coon* upon the urging of the appellant in *Polzin v. Mail Room*, 9th No. 05CA0107–M, 2006-Ohio-4418, 2006 WL 2466557, at ¶ 6. In *Polzin*, the majority opined:

> Appellant * * * urges this Court to overrule *Coon*. In her brief, however, Appellant provides no rationale for this Court to revisit a decision which we issued approximately one year ago. While Appellant alleges that her damages for a statutory claim are limited, this Court found in *Coon* that the statutory remedy provided by R.C. 4123.90 "adequately protects the public policy purpose of R.C. 4123.90." Id. at ¶ 26. Additionally, Appellant alleges that *Coon* should be overruled because it is in conflict with other districts. This fact was discussed in *Coon*, and we found the conflicting cases to be unpersuasive. Id. at ¶ 20–21. Accordingly, until the Ohio Supreme Court has spoken, we find no rationale to revisit our decision. We adhere, therefore, to our position in *Coon*.

{¶ 20} In his brief, Pinkerton argues that the trial court did not err in allowing his public-policy claim to go forward, because such a claim exists, our precedent is in conflict with other districts, and *Coon* should be overruled. We find Pinkerton's argument to be similar to the appellant's argument in *Polzin*, and we once again find no rationale to revisit our decision in *Coon*. Until the Ohio Supreme Court determines otherwise, this court is of the opinion that no public policy tort exists for alleged violations of R.C. 4123.90. *Coon*, at ¶ 26–27. Consequently, the trial court erred in denying defendants' motion for judgment on the pleadings. Defendants' first assignment of error has merit.

## ASSIGNMENT OF ERROR II

The trial court erred as a matter of law when it entered judgment against appellants on the jury verdict as to the claim for retaliatory discharge in violation of public policy based solely upon R.C. 4123.90.

## ASSIGNMENT OF ERROR III

The trial court erred as a matter of law when it denied the motions for directed verdict and judgment notwithstanding the verdict returned by the jury against appellant Robert Thompson, personally, on the claim of retaliatory discharge in violation of public policy based solely upon R.C. 4123.90.

## ASSIGNMENT OF ERROR IV

The trial court erred as a matter of law when it denied the appellants' motion for judgment notwithstanding the verdict as the claim of retaliatory discharge in violation of public policy based solely upon R.C. 4123.90 as that judgment is against the sufficiency of the evidence.

## ASSIGNMENT OF ERROR V

The trial court erred as a matter of law when it denied the motions for directed verdict and judgment notwithstanding the verdict awarding punitive damages.

## ASSIGNMENT OF ERROR VI

The trial court erred by abusing its discretion to the prejudice of appellants when it denied their motion for new trial.

{¶ 21} In their second, third, fourth, fifth, and sixth assignments of error, defendants challenge the trial court's rulings on various motions and the jury's verdict. In their fifth assignment of error, defendants challenge the jury's award of punitive damages, which were awarded as to Claim III. Given this court's resolution of defendants' first assignment of error, their second, third, fourth, fifth, and sixth assignments of error are rendered moot, and we decline to address them. See App.R. 12(A)(1)(c).

## ASSIGNMENT OF ERROR VII

The trial court erred to the prejudice of appellants when it awarded attorneys fees.

{¶ 22} In their seventh assignment of error, defendants argue that the trial court erred in awarding attorney fees to Pinkerton on the basis of the favorable verdict that he received as to Claim III. We agree.

{¶ 23} "If punitive damages are proper, the aggrieved party may also recover reasonable attorney fees." *Columbus Fin., Inc. v. Howard* (1975), 42 Ohio St.2d 178, 183, 71 O.O.2d 174, 327 N.E.2d 654. In other words, "[a]ttorney fees may be awarded as an element of compensatory damages where the jury

finds that punitive damages are warranted." *Zoppo v. Homestead Ins. Co.* (1994), 71 Ohio St.3d 552, 558, 644 N.E.2d 397. Because the award of attorney fees depends upon the award of punitive damages, however, a reversal of the punitive damage award will result in a reversal of the attorney fees award as well. See *Galmish v. Cicchini* (2000), 90 Ohio St.3d 22, 35, 734 N.E.2d 782.

{¶ 24} The trial court awarded Pinkerton attorney fees as a result of the jury's favorable verdict on Claim III and award of punitive damages. As we have already reversed the jury's verdict on Claim III and thereby eliminated Pinkerton's award of punitive damages, his award of attorney fees also must fail. See id. Therefore, the award of attorney fees is hereby vacated. Defendants' seventh assignment of error has merit.

### CROSS–ASSIGNMENT OF ERROR I

The trial court erred in granting summary judgment to envelope mart and Robert Thompson on Pinkerton's claim of employer intentional tort.

{¶ 25} In his first cross-assignment of error, Pinkerton argues that the trial court erred in granting defendants' motions for summary judgment as to Claim I. Specifically, Pinkerton argues that defendants were responsible for his June 4, 1999 press injury. We disagree.

{¶ 26} This court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. We apply the same standard as the trial court, viewing the facts in the light most favorable to the nonmoving party and resolving any doubt in favor of the nonmoving party. *Viock v. Stowe–Woodward Co.* (1983), 13 Ohio App.3d 7, 12, 13 OBR 8, 467 N.E.2d 1378.

{¶ 27} Pursuant to Civ. R. 56(C), summary judgment is proper if

(1) [n]o genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292–293, 662 N.E.2d 264. Specifically, the moving party must support the motion by pointing to some evidence in the record of the type listed in Civ.R. 56(C). Id. Once this burden is satisfied, the nonmoving party bears the burden of offering specific facts to show a genuine issue for trial.

Id. The nonmoving party may not rest upon the mere allegations and denials in the pleadings but instead must point to or submit some evidentiary material that demonstrates a genuine dispute over a material fact. *Henkle v. Henkle* (1991), 75 Ohio App.3d 732, 735, 600 N.E.2d 791.

{¶ 28} Pursuant to Civ.R. 56(C):

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

{¶ 29} In *Fyffe v. Jeno's, Inc.* (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108, the Ohio Supreme Court set forth the legal standard by which courts determine whether an employer committed an intentional tort against an employee:[2]

[I]n order to establish 'intent' for the purpose of proving the existence of an intentional tort committed by an employer against an employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation, (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty, and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task.

Id. at paragraph one of the syllabus.

{¶ 30} In order to set forth a prima facie case of an employer intentional tort, a plaintiff must establish all three elements of the *Fyffe* test. Therefore, a determination that no genuine issue of material fact exists as to one of the elements moots any discussion of the other elements. See *Pintur v. Republic Technologies, Internatl., L.L.C.*, 9th Dist. No. 05CA008656, 2005-Ohio-6220, 2005 WL 3117199, at ¶ 11 (finding the issue of substantial certainty dispositive and not addressing the other *Fyffe* elements). Accordingly, because we find that it is dispositive in this matter, we begin our analysis with the third prong.

{¶ 31} Pinkerton argues that defendants were aware that their employees cleaned the press's impression plates while the machine was still running.

---

**2.** The common-law test for employment intentional torts applies to Pinkerton's claim rather than R.C. 2745.01. In 1999, the Ohio Supreme Court found R.C. 2745.01 unconstitutional. *Johnson v. BP Chemicals, Inc.* (1999), 85 Ohio St.3d 298, 707 N.E.2d 1107, at syllabus. The new version of the statute did not take effect until April 4, 2005, almost a year after Pinkerton filed his claim. Because no valid employment intentional-tort statute was in existence at the time that Pinkerton filed his claim, we analyze his claim under the common law.

He further argues that defendants intentionally chose not to install safety guards on the press to speed up production. Consequently, Pinkerton claims that defendants are responsible for the injury he sustained when his fingers were caught in the machine's rollers because defendants required him to perform the dangerous task. Based on our review of the record, we cannot agree.

{¶ 32} The Ohio Supreme Court has stated:

"There are many acts within the business or manufacturing process which involve the existence of dangers, where management fails to take corrective action, institute safety measures, or properly warn the employees of the risks involved. Such conduct may be characterized as gross negligence or wantonness on the part of the employer. However, * * * such conduct should not be classified as an 'intentional tort' * * *."

*Sanek v. Duracote Corp.* (1989), 43 Ohio St.3d 169, 172, 539 N.E.2d 1114, quoting *Van Fossen v. Babcock & Wilcox,* 36 Ohio St.3d 100, 117, 522 N.E.2d 489. An employer must have required his employee to continue with a dangerous task despite having "actual knowledge of the exact dangers which ultimately caused" the employee's injury. *Van Fossen,* 36 Ohio St.3d at 112, 522 N.E.2d 489.

{¶ 33} Pinkerton failed to show that defendants, "under such circumstances, and with such knowledge, did act to require [him] to continue to perform the dangerous task." *Fyffe,* 59 Ohio St.3d 115, 570 N.E.2d 1108, at paragraph one of the syllabus. Regardless of the issue of the safety guard, Pinkerton did not set forth any evidence that defendants required him to clean the impression plates while the machine was running. For instance, there was no evidence that defendants ever reprimanded Pinkerton for turning the machine off to clean it or required him to maintain a pace that would have made it impossible to turn off the machine momentarily. Compare *Fyffe,* 59 Ohio St.3d at 119, 570 N.E.2d 1108 (finding that a genuine issue of material fact existed where defendant pushed plaintiff to work far above a normal speed on an unfamiliar, unguarded machine because almost half of the employees had failed to report to work). In fact, defendants specifically instructed their employees to turn off the press before attempting to clean the impression plates. Pinkerton attempts to circumvent this fact by arguing that defendants knew that some employees cleaned the machine in contravention of this instruction. However, that some employees chose to disregard defendants' instruction has no bearing on whether defendants required its employees to act in such a manner. See *Flint v. Internatl. Multifoods,* 9th Dist. No. 06CA008918, 2007-Ohio-679, 2007 WL 507070, at ¶ 25 (finding that employee exceeded the scope of his employment when employer instructed him to clean around a machine and he voluntarily put his hand into a running machine to clean it). Consequently, the trial court did not err in granting defendants'

motions for summary judgment. Pinkerton's first cross-assignment of error lacks merit.

## CROSS–ASSIGNMENT OF ERROR II

The trial court erred in dismissing Pinkerton's [retaliation] claim under R.C. 4123.90.

{¶ 34} In his second cross-assignment of error, Pinkerton argues that the court erred in granting judgment in favor of defendants on Claim II. Specifically, he argues that R.C. 4123.90 protects an employee who is discharged prior to filing a workers' compensation claim so long as the employee was pursuing the claim before termination. We agree.

{¶ 35} To establish a prima facie case for wrongful termination based on retaliation for filing a workers' compensation claim, i.e., retaliatory discharge, appellant must be able to prove the following: (1) he suffered an occupational injury, (2) he filed a workers' compensation claim, and (3) his discharge was in contravention of R.C. 4123.90, i.e., he was subsequently discharged from his employment in retaliation for filing the claim for benefits. *Huth v. Shinner's Meats Inc.*, 6th Dist. No. L–05–1182, 2006-Ohio-860, 2006 WL 456721, at ¶ 17, citing *Wilson v. Riverside Hosp.* (1985), 18 Ohio St.3d 8, 18 OBR 6, 479 N.E.2d 275, at syllabus. R.C. 4123.90 states:

> No employer shall discharge * * * any employee because the employee filed a claim or instituted, pursued or testified in any proceedings under the workers' compensation act for an injury * * * which occurred in the course of and arising out of his employment with that employer.

{¶ 36} R.C. 4123.90 applies only when an employee has been discharged as a result of "taking some action which would constitute the actual pursuit of his claim." *Bryant v. Dayton Casket Co.* (1982), 69 Ohio St.2d 367, 371, 23 O.O.3d 341, 433 N.E.2d 142. The "mere oral communication of an intent to pursue a claim" does not amount to "actual pursuit." *Roseborough v. N.L. Industries* (1984), 10 Ohio St.3d 142, 144, 10 OBR 478, 462 N.E.2d 384, fn. 1. Similarly, the mere reception of treatment for an injury, even if it is with the employer's knowledge, does not constitute "actual pursuit." Id. at 144, 10 OBR 478, 462 N.E.2d 384, fn. 2. Yet the Ohio Supreme Court has held that the physical filing of a written claim is not necessary to trigger the statute's protections. Id. at 143, 10 OBR 478, 462 N.E.2d 384. To determine whether an employee of a state fund insured employer "instituted" or "pursued" a claim prior to their discharge, this court looks to the record. *Franks v. Dave's Masonry*, 9th

Dist. No. 22876, 2006-Ohio-2848, 2006 WL 1541253, at ¶ 10–11.[3] We consider all of the evidence, such as whether the employee (1) told his employer that he was injured on the job, (2) notified his employer of his intention to file a claim as to a particular injury, and (3) requested any paperwork so as to file his claim. Id. at ¶ 14. Of course, if the employee actually filed a workers' compensation claim prior to his discharge, then we need not review the record for further evidence of "actual pursuit." See id.

{¶ 37} The court below held a bench trial on Pinkerton's Claim II, but ultimately rendered judgment in defendants' favor solely because Pinkerton had not filed a workers' compensation claim prior to his termination. The court did not consider whether Pinkerton had "instituted" or "pursued" a claim prior to his discharge, nor did it reach the underlying merits of Pinkerton's argument. Rather, the court found the timeliness of Pinkerton's filing to be dispositive of his claim. As we have noted above, however, R.C. 4123.90 also protects an employee who is in "actual pursuit" of a workers' compensation claim. See *Roseborough,* supra. Therefore, the trial court erred in denying Claim II solely because Pinkerton filed his workers' compensation claim after defendants' discharged him. Pinkerton's second cross-assignment of error has merit.

{¶ 38} Upon remand, the trial court must determine whether Pinkerton had "instituted" or "pursued" a workers' compensation claim prior to his discharge. If the court concludes that Pinkerton was actually pursuing a claim, then the court must address the merits of Pinkerton's retaliation claim.

### III

{¶ 39} Defendants' first and seventh assignments of error are sustained. Defendants' remaining assignments of error are moot. Pinkerton's first cross-assignment of error is overruled. Pinkerton's second cross-assignment of error is sustained. The judgment of the Lorain County Court of Common Pleas is affirmed in part and reversed in part, and the cause is remanded pursuant to the instructions set forth in Pinkerton's second cross-assignment of error.

> Judgment affirmed in part
> and reversed in part,
> and cause remanded.

SLABY, P.J., and DICKINSON, J., concur.

---

**3.** To the extent that the parties rely on *Hamby v. Natl. Gypsum Co.* (1986), 33 Ohio App.3d 258, 515 N.E.2d 943, in their briefs, their reliance is misguided. *Hamby* is no longer the controlling law in this jurisdiction. See *Franks,* at ¶ 11 (clarifying that an employee may pursue a claim under R.C. 4123.90 despite not having filed a workers' compensation claim prior to discharge).