{¶ 52} I respectfully dissent except as to the second assignment of error.
 {¶ 53} In regard to the standing issue, the majority concludes: "Given the breadth of the interests that are recognized under R.C. 313.19, and mindful of the Sixth District Court of Appeal's decision inLaFever [v. Licking Cty. Coroner's Office, 5th Dist. No. 06-CA-13,2006-Ohio-6795], we cannot conclude that TASER lacked standing to bring this action." Dr. Kohler challenges the trial court's finding that TASER had standing to prosecute its claim from two perspectives. First, she argues that the trial court erred by denying her original motion to dismiss for lack of standing. Second, she argues that the trial court erred by denying her "renewed Motion to Dismiss TASER for lack of standing at the close of Plaintiffs' case."
 {¶ 54} First, I would clarify this Court's standard of review as the majority does not enunciate it. I agree with TASER International, Inc.'s ("TASER") assertion that Dr. Kohler failed to articulate the applicable standard of review, but I disagree with TASER's assertion that this Court must review the trial court's denial of Dr. Kohler's motion to dismiss only for an abuse of discretion. TASER cites the Eighth District Court of Appeal's decision MBA Realty v. Little G, Inc. (1996),116 Ohio App.3d 334, 337-38, for the proposition that this Court must review the denial of a motion to dismiss for lack of standing under the deferential abuse of discretion standard. MBA Realty involved a defendant who filed a motion to dismiss a plaintiff's complaint presumably alleging breach of contract and/or money due on the basis of lack of standing for failure to register a fictitious trade name. The MBA Realty court indeed stated that the "trial court's judgment denying defendant-appellant's motion to dismiss will not be disturbed *Page 29 
unless it is clear that the decision was an abuse of discretion." Id. at 337, citing Blakemore v. Blakemore (1983), 5 Ohio St.3d 217.Blakemore, however, did not involve a ruling on a motion to dismiss. Rather, it involved the trial court's granting of a motion to modify or terminate alimony and, therefore, offers no support for the proposition of law advanced by the Eighth District or TASER in this case.
 {¶ 55} This Court reviews the trial court's denial of Dr. Kohler's motion to dismiss in both instances under a de novo standard of review. In regard to the original motion, "a motion to dismiss pursuant to Civ. R. 12 *** is the appropriate procedure for raising the defense of lack of standing to sue." A-1 Nursing Care of Cleveland, Inc. v.Florence Nightingale Nursing, Inc. (1994), 97 Ohio App.3d 623, 626-27. Specifically, a motion to dismiss for lack of standing, filed in response to a complaint, is properly brought pursuant to Civ. R. 12(B)(6) for failure to state a claim upon which relief can be granted. Woods v.Oak Hill Community Med. Ctr., Inc. (1999), 134 Ohio App.3d 261, 267. This Court reviews a trial court's ruling on a Civ. R. 12(B)(6) motion de novo. Pinkerton v. Thompson, 174 Ohio App.3d 229, 2007-Ohio-6546, at ¶ 18. In addition, this Court has reviewed the denial of a motion to dismiss for lack of standing de novo because the threshold issue of standing presents a question of law. Hicks v. Meadows, 9th Dist. No. 21245, 2003-Ohio-1473, at ¶ 6-7. Accordingly, this Court must review the trial court's denial of Dr. Kohler's initial motion to dismiss de novo.
 {¶ 56} Dr. Kohler's "renewed [m]otion to [d]ismiss," made after the close of TASER's case, was in effect a motion for a directed verdict pursuant to Civ. R. 50(A). This Court reviews such a motion de novo as it too "presents an appellate court with a question of law." Dennie v.Hurst Constr., Inc., 9th Dist. No. 06CA009055, 2008-Ohio-6350, at ¶ 6, quoting Jarvis v. Stone, *Page 30 
9th Dist. No. 23904, 2008-Ohio-3313, at ¶ 7. Accordingly, this Court must review the trial court's denial of Dr. Kohler's "renewed Motion to Dismiss" de novo.
 {¶ 57} Finally, the Ohio Supreme Court has stated that the "question of standing is whether a litigant is entitled to have a court determine the merits of the issues presented." Ohio Contrs. Assn. v. Bicking
(1994), 71 Ohio St.3d 318, 320, citing Warth v. Seldin (1975),422 U.S. 490, 498. The high court has held that "[w]hether established facts confer standing to assert a claim is a matter of law." Portage Cty. Bd.of Commrs. v. Akron, 109 Ohio St.3d 106, 2006-Ohio-954, at ¶ 90.
 {¶ 58} I do not dispute that the Ohio Supreme Court has held that a declaratory judgment action is not the appropriate mechanism by which to challenge a coroner's verdict. Perez v. Cleveland (1997),78 Ohio St.3d 376, paragraph one of the syllabus. I disagree, however, with the majority's leap in reasoning that the courts may not, therefore, look to considerations relevant to standing in declaratory judgment actions in determining whether a plaintiff has standing to bring an action pursuant to R.C. 313.19. It is true that R.C. 313.19 does not identify the class of persons who may initiate such an action. I disagree, however, with the conclusion reached by the Fifth District Court of Appeals inLeFever upon which the majority relies that "R.C. 313.19 does not place any limitation on what may be contested[,] the purpose for which a change is desired *** [or] who may initiate judicial review of a coroner's verdict." LeFever at ¶ 19 and 24. I believe such an interpretation of the statute is far too expansive. Most statutes do not identify the class of persons who may prosecute the statutory claim. That does not impute to every person or entity the requisite standing to pursue a claim, however.
 {¶ 59} I take well the guidance of the Perez court which held:
 "Courts are well equipped to determine the appropriate procedures to employ in hearing a cause of action. Issues of standing and application of the appropriate *Page 31 
statute of limitations often require judicial analysis beyond the language of the statute authorizing an action." Id. at ¶ 379.
Accordingly, I believe that this Court need not necessarily reject notions of standing within the context of declaratory judgment actions when reviewing whether a plaintiff has standing to maintain an action pursuant to R.C. 313.19.
 {¶ 60} At its most basic, standing requires:
 "that 1) a plaintiff suffer an actual injury, defined as an invasion of a legally protected interest that is concrete and particularized; 2) the alleged wrongful conduct be causally connected to the injury; and 3) it be likely that a favorable decision will redress the injury." State ex rel. Dellagnese v. Bath-Akron-Fairlawn Joint Economic Dev. Dist., 9th Dist. No. 23196, 2006-Ohio-6904, at ¶ 9, citing Lujan v. Defenders of Wildlife (1992), 504 U.S. 555, 560-61.
"A plaintiff must have a personal stake in the matter; the plaintiff's injury cannot be merely speculative but must be palpable and, also, must be an injury to himself personally or to a class." Hicks at ¶ 7, citingTiemann v. Univ. of Cincinnati (1998), 127 Ohio App.3d 312, 325. When considering whether a plaintiff has standing to pursue a statutory claim, this Court has stated that the plaintiff "must demonstrate that the interest he or she seeks to protect is arguably within the zone of interests to be protected or regulated by the statute[.]" (Internal quotations omitted.) Fair Hous. Advocates Assn., Inc. v. Chance, 9th Dist. No. 07CA0016, 2008-Ohio-2603, at ¶ 5, citing State ex rel. DaytonNewspapers v. Phillips (1976), 46 Ohio St.2d 457, 459.
 {¶ 61} I believe that TASER lacked standing to pursue its R.C. 313.19
claim in this case because it has not suffered an actual injury and because the interests it seeks to protect do not fall within the zone of interest to be protected by the statute.
 {¶ 62} First, all civil suits brought against TASER have been resolved in the company's favor. Further, the plaintiffs in the cases cited by the majority involved persons with direct interests in the cause of death of the decedent, such as persons accused in the death, not a *Page 32 
corporation seeking to make a preemptive strike to preclude lawsuits from being filed against it. Any future harm to TASER is merely speculative, and one could even say unlikely given that prior suits have been resolved in the company's favor. The "anti-TASER publicity" the company cites does not mention the company by name. TASER argues that Dr. Kohler "erroneously implicated a TASER device as causing or contributing to each one of the deaths," as though the device itself was somehow defamed. Upon review of the excerpts, I question whether a reader would indeed find them harmful to the reputation of TASER, any more than a tool company would suffer harm to its reputation if the medical examiner had listed hammer blows as a contributing factor to death. Under the circumstances, I am hard pressed to identify any concrete injury to TASER.
 {¶ 63} Second, I do not agree with the majority's implication that the zone of interest to be protected by the statute is so broad to allow any person or entity to bring a claim pursuant to R.C. 313.19 for public policy reasons to ensure the accuracy of a public record. TASER hints that the safety of police officers might ultimately be at risk if the medical examiner's verdict is allowed to reference its device as a contributing factor in these deaths. However, the crux of TASER's concern is "its ability to market and sell" these devices, specifically that it might lose profits if its weapon is actually identified as such. I do not believe that such concerns fall within the statutory zone of interest. Accordingly, I would sustain Dr. Kohler's first assignment of error.
 {¶ 64} I further believe that the trial court abused its discretion by prohibiting the medical examiner from testifying as to the basis of the findings set forth in the official reports. By prohibiting such testimony, the trial court turned the rebuttable presumption of validity contained in R.C. 313.19 on its head. Logically, the medical examiner must be allowed to testify *Page 33 
as to the basis of her findings. The burden then lies with the challengers to present evidence to rebut the basis of those findings.
 {¶ 65} The medical examiner has been trained to consider all forces, intrinsic and extrinsic, on a body when determining the cause and manner of death. Notwithstanding her admission that she does not understand how a TASER device works, her training provided her with the expertise to consider the impact of the forces exerted on the body in determining the cause of death. The Ohio Supreme Court held that a coroner is not limited to describing only physical or physiological facts for which she must have a working empirical knowledge. See State v. Balraj (1994), 69 Ohio St.3d310, 312, questioned on other grounds by Perez,78 Ohio St.3d at 378. Rather, she must consider "all attendant circumstances" in determining the cause and manner of death. Id. I believe those attendant circumstances are especially critical to a finding of the manner of death, for example whether the death is accidental or a homicide.
 {¶ 66} I would emphasize the distinction between the cause and manner of death. With respect to Hyde and Holcomb, the medical examiner listed the cause of death as probable cardiac arrhythmia and with respect to McCullaugh, as asphyxia, although these causes were facilitated by various conditions, or forces, impacting upon the body. Some of those forces were self-inflicted, like illegal drug use; some were lifestyle-or heredity-related, like hypertension; and some were external forces inflicted by others, like physical and electrical restraint. The manner of death in each case was ruled a homicide merely because there were external forces applied to each decedent which acted in tandem with the other stressors. I do not agree that an understanding of all aspects of TASER use is a necessary foundation before the medical examiner can determine that the electric stimulation from an admitted weapon constituted an *Page 34 
external force on a body. Accordingly, I dissent from the majority's opinion. I would concur, though, with the resolution of the second assignment of error. *Page 1