[Cite as *Merryweather Mgt., Inc. v. KNL Custom Homes, Inc.*, 2012-Ohio-2977.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

MERRYWEATHER MANAGEMENT,
INC., dba Merryweather Real Estate

      Appellant

      v.

KNL CUSTOM HOMES, INC., et al.

      Appellees

C.A. No.      25971

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     CV 2011 01 0314

DECISION AND JOURNAL ENTRY

Dated: June 29, 2012

---

CARR, Judge.

{¶1} Appellant, Merryweather Mgt. Inc., appeals the judgment of the Summit County Court of Common Pleas which granted judgment on the pleadings to appellee, KNL Custom Homes, Inc. This Court reverses.

I.

{¶2} This controversy arises out of KNL's refusal to honor its referral agreement with Merryweather, whereby KNL agreed to pay a 3% commission if it was able to enter into a contract with Ali and Azam Eghbal for the construction of a house.

{¶3} On January 18, 2011, Merryweather filed a complaint against KNL in which it asserted claims for breach of contract and promissory estoppel. After obtaining leave to plead, KNL filed its answer on March 15, 2011. On March 25, 2011, KNL filed a motion for judgment on the pleadings pursuant to Civ.R. 12(C). Merryweather filed a brief in opposition, and KNL replied thereto.

**{¶4}** On May 16, 2011, the trial court issued a journal entry granting KNL's motion for judgment on the pleadings and dismissing the complaint with prejudice. In granting the motion, the trial court specifically found that Merryweather is a real estate broker as defined by R.C. 4735.01(A)(7); that the underlying transaction was illegal due to the fact that the parties' "Building Referral Agreement" was deficient as to numerous requirements set forth R.C. 4735.55; and that Merryweather's promissory estoppel claim also failed due to the failure to comply with R.C. 4735.55.

**{¶5}** Merryweather filed a notice of appeal on June 9, 2011. On appeal, Merryweather raises two assignments of error.

## II.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING KNL'S MOTION FOR JUDGMENT ON THE PLEADINGS WITH RESPECT TO MERRYWEATHER'S CLAIM FOR BREACH OF THE BUILDER REFERRAL AGREEMENT.

**{¶6}** In its first assignment of error, Merryweather argues that the trial court erred in granting KNL's motion for judgment on the pleadings. This Court agrees.

**{¶7}** In support of its assignment of error, Merryweather argues that the trial court erroneously concluded that its agreement with KNL, designated by the parties as a "Builder Referral Agreement," was an agency agreement subject to the requirements of R.C. 4735.55. With respect to the specific terms of the agreement, Merryweather contends that it reached a third party agreement with KNL where KNL would pay a 3% referral fee if it reached a contract with Ali and Azam Eghbal for the construction of a house. Merryweather emphasizes that the agreement did not involve the sale of any existing real estate, and that the Eghbals, who

ultimately entered into a contract with KNL for the construction of a house, were not parties to the referral agreement.

{¶8} Civ.R. 12(C) states, "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." "Under Civ.R. 12(C), dismissal is appropriate where a court (1) construes the material allegations in the complaint, with all reasonable inferences to be drawn therefrom, in favor of the nonmoving party as true, and (2) finds beyond doubt, that the plaintiff could prove no set of facts in support of his claim that would entitle him to relief." *State ex rel. Midwest Pride IV, Inc. v. Pontious*, 75 Ohio St.3d 565, 570 (1996), citing *Lin v. Gatehouse Constr. Co.*, 84 Ohio App.3d 96, 99 (8th Dist.1992). Thus, Civ.R. 12(C) requires a determination that there are no material factual issues and that the movant is entitled to judgment as a matter of law. *Pontious*, 75 Ohio St.3d at 570, citing *Burnside v. Leimbach*, 71 Ohio App.3d 399, 403 (10th Dist.1991). Thus, a reviewing court will reverse judgment on the pleadings if the plaintiff can prove any set of facts that will entitle it to relief. *Gawloski v. Miller Brewing Co.*, 96 Ohio App.3d 160, 163 (9th Dist.1994).

{¶9} Merryweather's claims for breach of contract and promissory estoppel were premised on its assertion that KNL had failed to pay an agreed upon referral fee after it entered into a contract with the Eghbals for the construction of a house. In its motion for judgment on the pleadings, KNL characterized the agreement as an "agency agreement" that was subject to the requirements set forth in R.C. 4735.55. In regard to the contract claim, KNL argued the agreement was unenforceable and void because it did not meet the requirements of R.C. 4735.55. KNL further argued that Merryweather did not actually perform any services that would entitle it to receive a commission. With respect to the equitable estoppel claim, KNL argued that Merryweather, as a real estate entity, is charged with having knowledge of pertinent statutory

authority, and should not be permitted to recover under a quasi-contract theory when it has acted outside the scope of statutory authority. Finally, KNL argued that the entire complaint should be dismissed because Ohio law only permits licensed real estate brokers to recover unpaid commissions and Merryweather had failed to allege it was a licensed broker in its complaint.

{¶10} The trial court ultimately granted KNL's motion for judgment on the pleadings on May 16, 2011. In its judgment entry, the trial court emphasized that "[t]he very letterhead and language of the Builder Referral Agreement identifie[d] [Merryweather] as being a broker in this transaction." The trial court found that "[Merryweather] was acting for [KNL] by procuring 'customers' to sign contracts with the 'Builder' for the construction of homes, which is an improvement on the land." The trial court concluded that, based on the language of the agreement and the statutory definition of real estate broker, Merryweather was, in fact, a real estate broker and the parties' agreement was thereby subject to the requirements of R.C. 4735.55. The trial court subsequently concluded that the agreement violated R.C. 4735.55 in that it did not contain: (1) an expiration date; (2) a statement regarding prohibition of discrimination in real estate transactions in accordance with the Ohio and federal fair housing law; (3) a statement defining "blockbusting" and that it is illegal; and (4) a copy of the United States department of housing and urban development equal housing opportunity logotype. In light of these deficiencies, the trial court found the contract to be unenforceable under Ohio law and concluded that KNL was entitled to judgment as a matter of law on the contract claim. With respect to the promissory estoppel claim, the trial court concluded that because the underlying transaction was "illegal" under Ohio law, the "underlying transaction [cannot] shed its illegal status and become enforceable under a theory of promissory estoppel."

{¶11} The trial court's judgment was premised on its conclusion that Merryweather was acting as a "real estate broker" as defined by R.C. 4735.01(A)(7), which states:

"Real estate broker" includes any person, partnership, association, limited liability company, limited liability partnership, or corporation, foreign or domestic, who for another, whether pursuant to a power of attorney or otherwise, and who for a fee, commission, or other valuable consideration, or with the intention, or in the expectation, or upon the promise of receiving or collecting a fee, commission, or other valuable consideration does any of the following:

(7) Directs or assists in the procuring of prospects or the negotiation of any transaction, other than mortgage financing, which does or is calculated to result in the sale, exchange, leasing, or renting of any real estate[.]

{¶12} Pursuant to R.C. 4735.01(B), "real estate" includes, "leaseholds as well as any and every interest or estate in land situated in this state, whether corporeal or incorporeal, whether freehold or nonfreehold, and the improvements on the land, but does not include cemetery interment rights."

{¶13} Pursuant to R.C. 4735.51(B), an "agency agreement" is defined as "a contract between a licensee and a client in which the client promises to pay the broker a valuable consideration, or agrees that the licensee may receive a valuable consideration from another, for performing an act that requires a real estate license under this chapter." An "agency relationship" is a "relationship in which a licensee represents another person in a real estate transaction." R.C. 4735.51(A). A "licensee" is defined as "any individual licensed as a real estate broker or salesperson by the Ohio real estate commission pursuant to this chapter." R.C. 4735.51(J). A "client" is "a person who has entered into an agency relationship with a licensee."

{¶14} Pursuant to R.C. 4735.55, each written agency agreement shall contain all of the following:

(A)(1) An expiration date;

(2) A statement that it is illegal, pursuant to the Ohio fair housing law, division (H) of section 4112.02 of the Revised Code, and the federal fair housing law, 42

U.S.C.A. 3601, as amended, to refuse to sell, transfer, assign, rent, lease, sublease, or finance housing accommodations, refuse to negotiate for the sale or rental of housing accommodations, or otherwise deny or make unavailable housing accommodations because of race, color, religion, sex, familial status as defined in section 4112.01 of the Revised Code, ancestry, military status as defined in that section, disability as defined in that section, or national origin or to so discriminate in advertising the sale or rental of housing, in the financing of housing, or in the provision of real estate brokerage services;

(3) A statement defining the practice known as "blockbusting" and stating that it is illegal;

(4) A copy of the United States department of housing and urban development equal housing opportunity logotype, as set forth in 24 C.F.R. 109.30, as amended.

(B) Each written agency agreement shall contain a place for the licensee and the client to sign and date the agreement.

(C) A licensee shall furnish a copy of any written agency agreement to a client in a timely manner after the licensee and the client have signed and dated it.

{¶15} This Court has stated "[Civ.R. 12(C)] provides only that the court may consider the pleadings in rendering its judgment. All reasonable inferences must be made in favor of the nonmoving party. *Pinkerton v. Thompson*, 174 Ohio App.3d 229, 2007-Ohio-6546, ¶ 18 (9th Dist.). Where the action is based upon an agreement which is written, then its terms govern the rights and obligations of the parties." *Carolyn Riley & Assoc. Inc. v. Falb*, 9th Dist. No 13083, 1987 WL 16987 (Sept. 16, 1987). A copy of the "Builder Referral Agreement" was attached to and incorporated into the complaint pursuant to Civ.R. 10. The agreement was reduced to writing on Merryweather's stationary, which states in the heading that Merryweather is engaged in multiple business endeavors, namely investment, development, management, and brokerage. The agreement identifies Merryweather as "Broker," Betty Wulf as "Agent," KNL as "Builder," and Ali and Azam Eghbal as "Customer[s]." The agreement does not specify the entity to which the Eghbals are a "Customer," nor does it specify how the Eghbals first came to have a relationship with either Merryweather or KNL. The agreement is also devoid of any reference to

an existing piece of land. The substantive language of the agreement merely states that "Builder agrees to pay a commission in the amount of 3% of contract price to Merryweather Real Estate for providing services designed to facilitate a building contract between [the] above mentioned Builder and Customer." While the agreement was signed by representatives of both Merryweather and KNL, it was not signed by the Eghbals.

{¶16} A review of the terms of the referral agreement reveals that judgment on the pleadings was not appropriate in this case because questions of material fact exist in regard to the nature of the relationship between Merryweather, KNL, and the Eghbals. The foremost question is whether Merryweather was acting as a "real estate broker" as defined by R.C. 4735.01(A)(7) when it entered into the referral agreement with KNL. While the referral agreement identifies Merryweather as "broker" and references a prospective construction contract between KNL and the Eghbals, it is unclear whether Merryweather and KNL entered into the referral agreement with knowledge that it pertained a piece of "real estate" as defined by R.C. 4735.01(B). It is further unclear whether Merryweather had an interest in the "sale, exchange, leasing, or renting" of any real estate, as a real estate broker would pursuant to R.C. 4735.01(A)(7). Moreover, the fact that KNL asserted in its answer that Merryweather "failed to provide any services in furtherance of the [referral] agreement" suggests that there is a question of fact as to whether Merryweather acted as a broker by directing or assisting in the procurement of clients on behalf of KNL as contemplated by R.C. 4735.01(A)(7). Finally, there is a question of fact regarding the extent to which the Eghbals were a party, if at all, to the referral agreement. The agency agreement requirements set forth in R.C. 4735.55 are clearly designed to make a client in a real estate transaction aware of various public policy considerations associated with the sale, transfer, assignment, renting, leasing, subleasing, or financing of real estate. Here, it is unclear whether

the referral agreement resulted in any party becoming a client whereby the public policy safeguards set forth in R.C. 4735.55 would be relevant. Thus, as material questions of fact remain as to the nature of the relationship between the parties identified in the referral agreement, judgment on the pleadings was not proper in this case.

{¶17} Merryweather's first assignment of error is sustained.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING KNL'S MOTION FOR JUDGMENT ON THE PLEADINGS WITH RESPECT TO MERRYWEATHER'S CLAIM FOR PROMISSORY ESTOPPEL.

{¶18} In its second assignment of error, Merryweather argues that the trial court erred in granting KNL's motion for judgment on the pleadings with respect to its promissory estoppel claim. Because our resolution of the first assignment of error is dispositive of this appeal, this Court declines to address Merryweather's second assignment of error as it is rendered moot. *See* App.R. 12(A)(1)(c).

## III.

{¶19} Merryweather's first assignment of error is sustained. This Court declines to address the second assignment of error as it is rendered moot. The judgment of the Summit County Court of Common Pleas is reversed, and the cause remanded for further proceedings consistent with this opinion.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellees.

 

DONNA J. CARR
FOR THE COURT

 

MOORE, P. J.
CONCURS.

DICKINSON, J.
CONCURRING IN JUDGMENT ONLY.

{¶19} Section 4735.55(A) of the Ohio Revised Code only applies to written "agency agreement[s]," which are defined in Section 4735.51(B) as "contract[s] between a licensee and a client in which the client promises to pay the broker a valuable consideration, or agrees that the licensee may receive a valuable consideration from another, for performing an act that requires a real estate license under this chapter." R.C. 4735.55(A); 4735.51(B). Unlike the definition of "[r]eal estate broker," which "includes any person, partnership, association, limited liability company, limited liability partnership, or corporation, foreign or domestic" that engages in

certain activities related to real estate, or the definition of "[b]rokerage," which "means a corporation, partnership, limited partnership, association, limited liability company, limited liability partnership, or sole proprietorship issued a broker's license," the definition of "[c]lient" is limited to "a person who has entered into an agency relationship with a licensee." R.C. 4735.01(A); 4735.51(E), (F).

{¶20} The purpose of Section 4735.55 is to protect individuals who enter into agency agreements with sophisticated real estate brokers. The section's beneficiaries do not include domestic corporations like the alleged "client" in this case, KNL Custom Homes Inc. *But see* R.C. 1.59(C) ("As used in any statute, unless another definition is provided . . . '[p]erson' includes an individual, corporation, business trust, estate, trust, partnership, and association."). Upon review of the relevant statutory provisions, I conclude that KNL Custom Homes was not a "client" under Section 4735.51(F) and, therefore, Section 4735.55 did not apply to the builder referral agreement. Accordingly, I agree that the trial court incorrectly granted judgment on the pleadings to KNL Custom Homes.

APPEARANCES:

MARK W. BERNLOHR and SARAH B. BAKER, Attorneys at Law, for Appellant.

TODD A. HARPST, Attorney at Law, for Appellees.